(40 South. 857.)

No. 15,822.

WOOD v. NOEL et al.

(March 12, 1906.)

1. PUBLIC LANDS—HOMESTEAD—ENTRY—SALE —EVIDENCE—ESTOPPEL TO CONTRADICT.

It is true that a person cannot sell the land which he holds from the government under the homestead law before he has obtained a final receiver's receipt; but it is also true that his testimony cannot be heard as having preponderance against the testimony of witnesses, who testify that he sold the land after, and not before, the final receiver's receipt had been issued to him by the government.

2. CANCELLATION OF INSTRUMENTS — DEED — FRAUD—SETTING ASIDE.

While conspiracy is charged, it is not proven. It is not shown that defendant and his author—the latter bought directly from plaintiff—conspired together to defraud plaintiff from the title to his land.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Martin J. Wood against J. S. Noel and others. Judgment for defendants, and plaintiff appeals. Affirmed.

John Lake, Joseph E. Johnston, and Alexander & Wilkinson, for appellant. David Thompson Land, for appellees.

BREAUX, C. J. The ownership of 160 acres of land was the cause of controversy.

It is farm land; pine and oak timber are the trees thereon.

Plaintiff seeks to set aside a deed of sale which he signed on the ground of fraud.

An agent of the Kansas City Southern Railroad Company, J. P. Flournoy, while out inspecting lands for the company, stopped at plaintiff's residence.

Plaintiff rendered this agent some services for which he felt grateful, and after a time plaintiff said to him (the agent) that he desired to enter a tract of government land near by, and at once the railroad agent promised to help out the plaintiff. He went to Natchitoches, and made the original entry for plaintiff under the homestead law.

He loaned several amounts to plaintiff, aggregating altogether about $340. He says that he was prompted by good feeling to confer the favor upon plaintiff, and he did not expect to make a cent in the matter of this homestead entry; all he wanted was his money.

He very soon, perhaps too soon, commenced to suspect that plaintiff would not pay him his loan. Plaintiff, on the other hand, allowed time to pass, unmindful of his pecuniary obligation to his creditor.

With a view to collecting, we infer, the creditor advised Wood, the plaintiff, to make final proof of his claim to the homestead. This was possible as plaintiff and his family had resided on the land for 15 months.

After due proceedings, plaintiff obtained his receiver's receipt from the Land Department. It was dated the 13th day of May, 1897. About the same time, but a little after, plaintiff was induced to sell the land which he had thus entered. In matter of this sale, Flournoy had given himself considerable concern, as he desired to collect the amount due to him.

After some time had elapsed, Wood brought suit to set aside the sale which he had made to Kerley, the vendor to defendant. In this suit he charged that before he had received his final certificate the creditor, pressingly demanded the payment of the amount he had advanced; that he (plaintiff), in order to placate his creditor agreed that the proceeds of the sale of timber on the land would be applied to the payment of his claim; that Flournoy drew up a written contract to that effect, that he (Wood), as he cannot read nor write, made his mark to it. He asserts that he was quite certain that he never sold the land. Flournoy emphatically denies that any agreement was written by him which plaintiff signed.

It is made to appear by the evidence that about the time that the final entry was made there was some wrangling between the members of a fishing and hunting club and the inhabitants of the vicinity about a road to the clubhouse. During the trouble which the members were having about a road to their clubhouse, it was suggested that the land in question might be bought. One of the members of the club bought the tract with the understanding entered into with Noel the defendant, that after having laid the road to the property of the club the land in question, less the road, would be sold to Noel the defendant.

In accordance with the agreement, after a time, Kerley sold the land to the defendant.

Plaintiff in his suit substantially charges that a conspiracy was entered into, and that in consequence he was defrauded of his land; that particularly Flournoy resorted to fraudulent means to get a title to his land, which he placed in the name of Kerley; that even after the sale to Kerley the vigilant creditor wrote him a letter, which showed that

he (the plaintiff) was still the owner of the land, considered at the time valuable on account of the timber and the oil it was thought to have.

Plaintiff alleges that he has never receiv ed any price for the land; that after having received the letter above alluded to he offered to pay the price which was mentioned in the deed to Kerley, but that it was refused.

It is true, as charged by plaintiff, that after the sale to Kerley on the 16th day of May, 1897, the alert creditor, J. P. Flournoy, wrote to plaintiff, saying to him that he had received an offer of $300 for the land in question, and advised him that if he could raise the amount he should do so. He also informed him that he was in need of amounts due him, but that he did not desire to make any profit at all in the transaction. He insisted upon a sale in order to collect his claim as creditor of plaintiff.

Plaintiff's contention is that he did raise the amount, and on the 18th of the same month he called on defendant Noel, and offered to pay it to him; that he also called on S. N. Kerley, the buyer, and that he was informed by all parties that it was too late; that the sale was closed and amount paid.

The year after the homestead entry, Wood moved away from the place and went to another parish, and there established his home.

He was away altogether over two years.

It is also in evidence that the deed under which Kerley held was written by the clerk of court; that highly reputable persons signed as witnesses; that he (plaintiff, Wood) was fully informed of the nature of the deed; and that no attempt in matter of passing the deed was made to take undue advantage of him.

The judge of the district court, who heard the witnesses, doubtless knew something of their reputation, decided that the weight of the testimony was with defendant, and rendered judgment in his favor.

From this judgment, plaintiff prosecutes this appeal.

The first proposition which suggests itself for discussion is whether the plaintiff could sell the land he entered before he had obtained the final receiver's receipt.

The policy of Congress, as laid down in the statute, is against such a sale. It is not countenanced at all; the idea being to confer a permanent benefit upon the settler. There is no thought on the part of the government of providing him with property which he may barter or sell during the time that he is earning his homestead.

But that is not really the question involved here. The difficulty which meets Wood, the homesteader, consists in his having declared under oath that he had not sold nor mortgaged the property.

The following is the declaration to which he swore at the time that he applied to complete his entry:

Question 11 of the final affidavit required by homestead claimants:

"Have you ever sold, conveyed or mortgaged any portion of the land; and if so, to whom and for what purpose? A. No."

This was a solemn and binding oath taken by plaintiff. The least effect it can have is to render futile all attempts on his part to set aside a sale, because it was entered into against the policy of the government. He cannot question his own declaration.

We are constrained, with the proof before us, to hold that the plaintiff has fallen into a grave error in view of the oath which confronts him in attempting to question the correctness of the testimony of Flournoy and others by his own. The clerk of the court has testified in support of the good faith of the transaction. He says that the act of sale was read to plaintiff and carefully explained to him.

It is true that Flournoy, the creditor, after the date of the deed to Kerley (but which Kerley had not yet signed although it had been signed by Wood the vendor), wrote a letter which contained an expression leading to an inference that the land had not yet been sold. The witness Flournoy explains that although the deed had been signed by plaintiff as vendor, in prevision of a sale to Kerley, in view of the fact that the latter was slow in coming up with the cash, he had written to plaintiff in order if he chose that he might avail himself of the unconsummated deed to buy the property himself or sell it to some one else for a larger price; that the vendor, Wood, did not come in answer to this letter, and that when Kerley came with the price, which enabled him (the creditor) to satisfy his claim, in accordance with plaintiff's consent, he accepted the amount, Kerley signed the deed, and the sale was closed; and that thereafter plaintiff could no longer be heard to set aside the deed.

We must say that there are circumstances connected with this transaction somewhat peculiar. At the same time we are not of opinion that they offer sufficient ground upon which to set aside the sale made by Kerley to the defendant.

We have noted that the land was of little value at the time; that these proceedings were put on foot after it had become valuable; that while it was of little value, plaintiff abandoned his residence, and was away two years, and gave it very little, if any, attention.

True, there is evidence of an understanding between Noel defendant, and his vendor, Kerley. Noel did say to Kerley that the latter would not lose; that he would buy the land from Kerley and take it off his hands. This understanding of itself was legitimate enough. It does not manifest any intention to defraud. It is evident, however, that the buyer, Noel, sought his own interest in the matter, but the proof is lacking without plaintiff's testimony in his own behalf to show that defendant conspired with Flournoy and others to despoil plaintiff of his land.

The conspiracy charged is not proven.

It is therefore ordered, adjudged, and decreed, that the judgment appealed from is affirmed.